KILBURN MILL *v.* UNITED STATES (No. 4269) [1]

[1]C. A. D. 114.

United States Court of Customs and Patent Appeals, March 20, 1940

*Joseph F. Lockett* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument February 6, 1940, by Mr. Lockett and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [2]

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (First Division) overruling four protests of appellant, Nos. 815404–G/21647, 815405–G/21648, 815406–G/21649, and 815407–G/21650, and overruling in part protest No. 815408–G/22002. Said protests were filed by appellant against a decision of the collector at the port of Boston with respect to his allowance of drawback on the exportation of certain cotton noils and strips produced from imported raw Egyptian cotton which had been assessed with duty at 7 cents per pound under paragraph 783 of the Tariff Act of 1930.

Appellant is a manufacturing corporation engaged principally in the manufacture of fine long staple cotton yarns, some of which are produced from imported Egyptian cotton. In the process of manufacture of such yarns a point is reached where a separation of the cotton occurs, resulting in what is termed sliver, used by appellant in the production of its yarn, and noils, strips and waste, none of the latter of which are used by appellant. The noils and strips are sold by it at their market value. It appears that the sliver has no market value for the reason that such sliver is used, as a general rule, only by the factory producing the yarn from the raw cotton, and therefore the sliver is not a commercial product.

The collector determined the relative values of the several products in arriving at the amount of drawback to be allowed, and it is his determination of such values that is challenged by appellant.

Section 313 (a) of the Tariff Act of 1930, which is here involved, reads as follows:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after the date of the enactment of this Act. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

---

[2] Jackson, Judge, took no part in the consideration or decision of this case.

It appears from the evidence in the case that the collector determined the relative values of the sliver, noils, and strips in the following manner. He first determined the total cost of production of all three products, sliver, noils, and strips, by adding to the cost of the cotton used the cost of all labor and overhead. From the total cost so obtained the collector deducted the amounts realized from the sale of the noils and strips. The remainder he considered to be the value of the sliver at the time of separation. He further considered the values of the noils and strips to be the actual amounts realized in the sale thereof which, he assumed, represented the actual market values thereof at the time of their separation from the sliver. In the computations attached to the collector's liquidation of the drawback entry it is stated that there is no market for sliver, and it is assumed that the cost of the sliver is the actual value.

Appellant's ground of complaint against this method is that the collector compared the cost of production of one of the products, sliver, with the market values of the other two products, noils and strips, and contends that such a method did not reflect "relative values at the time of separation" as required by section 313 (a). Appellant further contends that, inasmuch as the sliver had no market value the correct method was to compare cost of production of the sliver with the cost of production of the noils and strips, and that by such method only could the relative values of the products be determined. With respect to this contention of appellant the trial court in its decision stated:

The outstanding fallacy of the method contended for by the plaintiff is that it assumes that the byproducts—noils and strips—*were produced on a cost basis.* This, of course, is not the fact. As already stated, the product desired was the sliver; the noils and strips were unsought for, but inevitable results of the operations necessary to produce sliver.

Since the noils and strips were not produced on a cost basis any attempt to assign them values based upon cost must result in values which have no basis in fact and which are not in true relation to the value of the sliver.

It is complained by the plaintiff that the method used by the collector results in the establishment of values not relative since the value of the sliver is figured on a cost basis while it is claimed the values of the noils and strips are figured on a market-value basis. Since the sliver was produced on a cost basis and was not sold in the market in the ordinary course of trade its only value at the time of separation was its cost, that is, the total cost of material, labor, and overhead used in producing it, less any amounts recoverable by the sale of byproducts. The only value the byproducts had at that time was the price which could be obtained for them in the market. Thus the values of the sliver, noils and strips found by the collector are relative in that they represent the only values the products had at the time of separation and they represent the real values of such products so far as they could be determined at that time.

The court overruled the protests with the exception of protest No. 815408–G/22002, which latter it sustained with respect to entry #903 involved therein, and in all other respects this protest also was overruled. The reasons for sustaining this protest in part have no rele-

vancy to the issues before us and are not involved in this appeal. From the judgment so entered this appeal was taken.

Before discussing the merits of the case we would observe that when originally called for trial at the port of Boston the Government moved to dismiss the protests as being insufficient to confer jurisdiction upon the Customs Court. Decision was reserved and testimony was taken upon the merits of the case and the cause was submitted to the court. Thereafter the court granted the motion to dismiss the protests and entered judgment accordingly. Upon appeal we reversed the judgment of the trial court, holding that the protests were sufficient to confer jurisdiction upon that court, and remanded the cause to the trial court for further proceedings. *Kilburn Mill* v. *United States*, 26 C. C. P. A. (Customs) 54, T. D. 49598.

The trial court, pursuant to our remand, considered the merits of the cause upon the original record made before it, and its judgment entered thereon is the subject of this appeal.

The issue in this case was concisely stated by appellant's counsel at the beginning of the trial before the Customs Court as follows:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Now, therefore, the issue is whether the action of the collector in liquidating these entries upon the basis of the cost of the sliver and the value of the noils and the strips was a relative comparison; was a comparison that showed the relative values, was such a comparison that showed the relative values at the time of separation. We claim that such a comparison is not relative within the meaning of relative value in Section 313-A of the tariff act. And therefore there being no value, no market value, for the sliver they should have been liquidated upon the basis of the cost of the sliver and the cost of the noils and the strips so that cost in every case would be relative. The costs of these various products are relative.

It is established by the evidence that noils and strips are by-products in the production of sliver, that at the time of separation of the products the noils and strips had market values, and that sliver, the principal product, had no market value; that in arriving at the relative values of the products the collector compared the cost of production of the sliver with the market values of the noils and strips, while appellant's claim, as hereinbefore stated, is that, inasmuch as the sliver had no market value, the relative values should be ascertained by comparing the costs of production of all three products.

It is well established in customs law that where an importer states with specificity his objections to a decision of the collector he is limited thereby. *United States* v. *Troy Laundry Machinery Co.*, 5 Ct. Cust. Appls. 430 T. D. 34947, and cases cited. It follows that in order for appellant to succeed in the case at bar it must establish not only that the relative values found by the collector are wrong, but that the basis it advances for ascertaining the relative values is correct.

It would seem also that if, as a matter of law, no relative values can be ascertained, under section 313 (a) no drawback can be allowed. However, that question is not before us, for, if appellant has not established its claim of relative values, the decision of the collector must stand, even though it be erroneous.

The precise issue before us is novel, and so far as we can ascertain has never been passed upon by any court.

At the outset we would observe that it is very questionable if there can be ascertained any cost of production of a by-product other than costs of manipulation of the same after its separation from the principal product, but this we do not find it necessary here to decide.

We will make one further preliminary observation. The Government challenges the method employed by appellant in arriving at the costs of production of the noils and strips. This matter likewise we do not find it necessary to decide in view of the conclusion we have reached upon the principal branch of the case.

This principal question is, upon the evidence in this case may costs of production of the three products, sliver, noils, and strips, be compared with each other in order to arrive at the relative values of the same as appellant contends.

To illustrate the difference in the method employed by the collector and that employed by appellant, we copy a portion of exhibit 6, which is a certificate of manufacture covering part of the merchandise here involved. Attached thereto is a sheet containing the computation made by appellant of the drawback allowable on appellant's theory, and also a computation made by the collector of the drawback actually allowed. Following are pertinent portions of said papers, the first being the computation made by the collector.

### Cost of Production

| | | |
|---|---|---|
| 179,153 lbs. Egyptian Cotton Used @ 19¢ | $34, 039. 07 | |
| 117,591  "    "    Combed Sliver produced @ $.0397 | 4, 668. 36 | |
| 34,139  "    "    Comber Noils produced @ .0397 | 1, 355. 32 | |
| 10,863  "    "    Card Strips produced @ .0150 | 162. 95 | |
| | | $40, 225. 70 |

### Less amounts recovered on By-Products

| | | |
|---|---|---|
| 34,139  "  Comber Noils @ $. 09 | $3, 072. 51 | |
| 10,863  "  Card Strips @    . 1025 | 1, 113. 46 | |
| | | 4, 185. 97 |
| Factory value of Combed Sliver at time of separation | | 36, 039. 73 |
| 117,591  "  Combed Sliver @ $. 30648375 | 36, 039. 73 | |
| 34,139  "  Comber Noils @    . 09 | 3, 072. 51 | |
| 10,863  "  Card Strips @    . 1025 | 1, 113. 46 | |
| | 40, 225. 70 | |

The computation made by appellant on the same merchandise follows:

| | | |
|---|---:|---:|
| Value of Egyptian Cotton put to Process (upon which duty was paid), 175,685 Pounds at 23.2¢ per pound | | $40, 758. 92 |
| Picking Cost | . 0038 | |
| Carding Cost | . 0112 | |
| Drawing & Doubl. Cost | . 0085 | |
| Combing Cost | . 0162 | |
| Total Mfg. Cost per Pound | . 0397 | |
| Pounds of Egyptian Sliver Produced 117,591 × .0397 (Mfg. Cost) | | 4, 668. 36 |
| Total cost of 117,591 Pounds Egyptian Combed Sliver | | 45, 427. 28 |
| Less: Amounts recovered on By-Products and Waste | | |
| Sakel Comber Noils, 34,139 lbs. @ .09¢ | $3, 088. 71 | |
| Sakel Card Strips, 10,863 lbs. @ .10¼¢ | 1, 113. 46 | |
| Value of Waste—Picker—Card Fly—Trunk Waste | 73. 94 | |
| | | 4, 276. 11 |
| Factory Value of Combed Sliver at Time of Separation | | 41, 151. 17 |

*Factory Value of Comber Noils*

| | |
|---|---:|
| Cost of Noils, 34,139 lbs. at .2717¢ per pound (Cotton 23.2¢ plus Mfg. Cost .0397) | 9, 275. 57 |
| Less: Credit—Sakel Card Strips & Picker, Card Fly and Trunk Waste | 1, 187. 40 |
| Factory Value of Comber Noils | 8, 088. 17 |
| Factory Value of Card Strips 10,863 lbs. at .2470¢ (Cotton 23.2¢ plus Picker & Carding Cost .0150) | 2, 683. 16 |
| Less: Credit—Picker—Card Fly—Trunk Waste | 73. 94 |
| Factory Value of Card Strips | 2, 609. 22 |

*Summary of Relative Values at Time of Separation*

| | Values | Percentages |
|---|---:|---:|
| Sakel Combed Sliver | $41, 151. 17 | 79. 37% |
| Sakel Comber Noils | 8, 088. 17 | 15. 60% |
| Sakel Card Strips | 2, 609. 22 | 5. 03% |
| Totals | 51, 848. 56 | 100% |

The discrepancies in the two computations as to the quantity and cost of Egyptian cotton initially used and the prices received by appellant for the noils and strips are immaterial so far as the issue before us is concerned, but it will be observed that appellant's computation of costs is largely in excess of the actual cost of production of the three products combined. This grows out of the fact that while,

according to such computation, only 175,685 pounds of Egyptian cotton were used, the cost of 220,687 pounds has been used in computing costs of production of the three products. This, too, is immaterial in view of the conclusion we have reached with respect to the correctness of the method of arriving at relative values employed by appellant.

It will be observed that in appellant's summary of relative values it is assumed that the combined value of the noils and strips is $10,697.39, and that this is equal to 20.63 per centum of the value of the three products combined. However, the actual market values of the noils and strips total $4,202.17, and if this amount represents 20.63 per centum of the value of the three products, then the value of the sliver, figured as 79.37 per centum, would equal $16,167.05, which amount is far below the assumed value of the sliver ($41,151.17) as stated in the above summary.

It will be further observed that under appellant's computations the market values of the noils and strips were approximately 40 per centum of the cost of their production as claimed by appellant. In other words, the noils and strips were, according to appellant's theory, sold at a little more than one-third of their cost. This being true, in order to arrive at relative values of the three products, as distinguished from their cost of production, we must assume that the actual value of the sliver was approximately 40 per centum of its cost of production. If we so assume, then the relative values claimed by appellant are correct, but this would be an untenable assumption for there is no contention that appellant produced sliver at a loss as well as noils and strips.

It is true that testimony on behalf of appellant is to the effect that while the sliver here in question had no market value, it could be sold at a price less than its cost of production, and one witness, H. A. Mongeau, testified in part as follows:

Q. Speaking about the market value of sliver, would the factory cost of sliver be about 50 per cent more than the market value thereof?—A. I believe that would be about right.

However the record shows no qualification of this witness to testify with respect to the value of any of the products here involved. He was a certified public accountant, and prior to entry upon that profession he was an internal revenue agent in the income tax division. With respect to his connection with appellant he testified as follows:

Q. Will you state what connection you have with the Kilburn Mill?—A. I am called upon to prepare all their taxes, income, State, and all kinds of taxes; also to go over all their figures as to the determination of prospective balance sheets, etc.; also to prepare all their cost figures for the purpose of determining the cost of all their yarn that they sell.

The witness was employed by appellant also in connection with its drawback claims here involved.

The trial court evidently considered the above-quoted testimony of no probative force for it is not referred to in its decision, and under the circumstances we cannot consider it as having any probative force in determining the relative values of the products here involved. Furthermore the evidence is overwhelming that there was no market value for sliver.

If the evidence showed that the noils and strips had no market values, we might assume that the costs of production of the three products (assuming that the costs of production of the byproducts noils and strips could be ascertained), in the absence of market values, would fairly reflect their actual or intrinsic values, and thus their relative values might be determined by comparing their relative costs. But we are clear this may not be done where absence of market value of only one of the products is established, for it is clear that in a case like that before us we may not assume that the costs of production of the noils and strips reflect their values for purposes of comparison or otherwise.

It therefore appears that if the collector erred in comparing cost of production of the sliver with the market values of the noils and strips, appellant has likewise erred in ignoring the market values of the noils and strips, and in having employed their assumed costs of production which, according to appellant's computations, far exceeded their market values.

Appellant's brief contains the following:

The primary issue in the present case is not the correctness of the method used by the Appellant in determining costs, but whether the Collector's method of liquidation was correct. If the Appellant has used an incorrect method in calculating costs, which we do not concede, such action did not justify the Collector in using an incorrect method in determining the relative values of the products in question. Again, if the Appellant incorrectly calculated any of its costs, the adjustment is an administrative matter which can be left to the Collector upon the re-liquidation of the entries.

In this statement appellant's counsel is correct only in part. Regardless of any error made by the collector, the burden was upon appellant, in order to obtain relief, fairly to establish the relative values of the sliver, noils, and strips. If it has failed to do this its protests were properly overruled by the Customs Court. It is true that if appellant has actually presented proofs from which the relative values of the three products may be ascertained, differing from their relative values found by the collector, we may ignore any error in appellant's computations and ascertain the correct relative values, there being no conflicting evidence of any probative force upon this point. We can, however, find no such evidence in the record and

there is therefore no occasion to consider the correctness of appellant's computations because its entire case is based upon a cost of production theory which we find to be erroneous.

To conclude, we are convinced that appellant's method cannot, under the evidence in this case, reflect the relative values of the sliver, noils, and strips, and appellant has presented no evidence by which such relative values can be determined with any greater certainty than results from the method employed by the collector. While it may be that the relative values of the noils and strips as found by the collector are too low, and appellant may receive a less amount of drawback than is just, nevertheless the decision of the collector must stand in the absence of proof of higher relative values of the noils and strips, for we cannot, upon the record before us, assume that the actual intrinsic value of the sliver was only about 40 per centum of its cost of production, which we would have to do in order to arrive at the relative values claimed by appellant.

For the reasons herein stated the judgment appealed from is *affirmed*.